WILLIAM E. NALLEY, APPELLEE AND CROSS-APPELLANT,
v. CONSOLIDATED FREIGHTWAYS, INC., A CORPORATION,
APPELLANT AND CROSS-APPELLEE.

282 N. W. 2d 47

Filed August 14, 1979. No. 42295.

Robert F. Craig, William T. Oakes, and Steven F. Stratman of Kennedy, Holland, DeLacy & Svoboda, for appellant.

James E. Schneider and James R. Nisley, for appellee.

Heard before BOSLAUGH, WHITE, and HASTINGS, JJ., and GRANT and SPRAGUE, District Judges.

GRANT, District Judge.

This is an appeal from an order of the Nebraska Workmen's Compensation Court. The case was first tried before a single judge of that court, who determined that plaintiff was temporarily totally disabled from the date of the accident to the time of the hearing, would continue to be totally disabled for an indefinite time, and was entitled to benefits under the Nebraska Workmen's Compensation Law.

On appeal by defendant employer, the matter was reheard before three judges of the Nebraska Workmen's Compensation Court. That court generally affirmed the one-judge award and found that plaintiff was temporarily totally disabled and was entitled to temporary disability payments for so long a period as the total disability persisted. The court, on the rehearing, also ordered medical payments and an attorney's fee of $500. Defendant thereafter duly perfected its appeal to this court, assigning as error that the Workmen's Compensation Court erred in holding that defendant had failed to prove by a preponderance of the evidence that the accident occurred by reason of plaintiff's intoxication.

The record shows that on May 6, 1977, plaintiff Nalley was in the employ of defendant, Consolidated Freightways, Inc., working as an over-the-road truckdriver, and had been so employed for about 9 years, during which time he had driven approximately 800,000 to 1,000,000 miles.

On the evening of May 5, 1977, plaintiff testified that between about 8 p.m., and 12:45 a.m., he had approximately 10 drinks at a bar, and that he then went to a friend's house and had one more drink and some coffee. He went to bed about 1:30 a.m. On May 6, 1977, he had breakfast and went to a dental appointment at 9 a.m. No medication was administered during that appointment, which lasted until 10:45 a.m. Plaintiff further had two drinks downtown about 11 a.m., and then returned home where he had another drink. Plaintiff reported for work at defendant's place of business in North Platte at 4 p.m. Plaintiff went to the defendant's dispatcher and got his bills and papers showing he was to drive a White Freightliner diesel tractor, pulling two 29-foot long trailers, making a rig about 65 feet long. Plaintiff filled out his logbooks and finished his other paperwork, and then went to see and talk to defendant's terminal manager. At plaintiff's request, the

manager gave him the following Sunday off. Plaintiff then returned to his rig, put everything he was going to carry on the trip into the cab and secured those items, and then hooked up his C.B. radio. Plaintiff then visually checked his truck and rig and examined the "write-up cards" of the previous drivers of the truck. These cards showed an oil leak had been reported and plaintiff returned to the dispatcher and discussed that problem with him. Plaintiff was told to watch the leak and if it got bad to "call the Chicago shop." Plaintiff then left the terminal in the truck, drove ¼ mile to Interstate Highway No. 80, where he turned east. When the truck started east on interstate highway 80, plaintiff noticed that the truck wasn't handling right, but rather was "squirrelly" — that is, hard to handle. Plaintiff testified that the rig "wants to roadwalk, it wants to weave around." Plaintiff then stopped the truck at a scale 2 miles east of North Platte and again checked the truck over, but found nothing wrong. Plaintiff resumed his journey and proceeded another 11 miles when the accident occurred.

Plaintiff had no recollection of what happened immediately prior to the accident, but a westbound truckdriver saw the accident. That witness testified plaintiff was proceeding east in a normal manner in the middle of the right-hand lane of the interstate highway at about 55 miles per hour, when the truck suddenly made "a sharp right-hand turn" through the guardrail, and "went up underneath the overpass between the pillar and the embankment," eventually rolling over on the truck's top and down the ditch. This witness testified the truck did not drift over into the guardrail, but that "It swerved right into the guardrail. * * * like something grabbed that steering wheel and turned into the guardrail." Plaintiff was injured in the accident.

Plaintiff was taken to the Great Plains Medical Center at North Platte where he was hospitalized

until June 6, 1977, and where he underwent extensive treatment for his injuries. About 1½ or 2 hours after the accident a sample of plaintiff's blood was taken at the order of defendant company. This sample was analyzed and testimony adduced showed a .142 percent blood alcohol percentage.

Testimony produced by defendant from a qualified pathologist, on the basis of purely hypothetical questions (the witness had never seen plaintiff), indicated that an alcohol reading of .142 percent at 7 p.m., when the test was taken, would indicate a .170 percent blood alcohol at 5:30 p.m. — the approximate time of the accident. This level of alcohol in the blood would cause a severe effect on the central nervous system and would cause impaired vision, including a possible loss of peripheral vision; impaired visual acuity; impaired depth perception; double vision, resulting in great difficulty in determining which of two objects, seen when looking at one object, is the true object; impaired judgment; impaired judgmental control; and impaired muscle coordination. The witness testified that a person with .170 blood alcohol percentage would be intoxicated and his ability to drive would be impaired. The witness also testified that a person with such an alcohol content in the blood, when driving a car, would think he was driving in a straight line, when in actuality he would be weaving back and forth to get in a straight line.

Based on this testimony, the Workmen's Compensation Court found as follows: "The blood examination showing a .142% blood alcohol concentration is clear evidence that plaintiff was suffering a degree of alcohol intoxication. Further, the deposition testimony of Dr. Roffman indicated that the degree of intoxication shown was sufficient to cause substantial physical and mental impairment in any person so intoxicated. Nevertheless, the defendant has failed to prove by a preponderance of the evidence

that the accident occurred *by reason* of plaintiff's intoxication.  Specifically, it has failed to show that plaintiff's presumably impaired vision and reflexes caused him to suddenly drive his truck off the road on I-80 at a point where the highway was straight and level and where visibility was apparently unrestricted.  It is just as probable that the plaintiff fell asleep, or that a mechanical defect caused the sharp right hand turn described by eye-witness Kleier.  To reach the conclusion urged by the defendant would require the Court to indulge in speculation, conjecture or surmise, which this Court declines to do, particularly in view of the Kleier testimony."

The legal boundaries of the review by this court concerning findings of fact made by the Nebraska Workmen's Compensation Court have been set out many times.  In Newbanks v. Foursome Package & Bar, Inc., 201 Neb. 818, 272 N. W. 2d 372, we stated: "Findings of fact made by the Nebraska Workmen's Compensation Court after rehearing have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.  In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party.  Hyatt v. Kay Windsor, Inc., 198 Neb. 580, 254 N. W. 2d 92."

It is also clearly established that "issues of causation are for determination of the fact finder."  Newbanks v. Foursome Package & Bar, Inc., *supra.* See, also, Hyatt v. Kay Windsor, Inc., *supra.*

And finally, it is settled law that the burden of proof in a workmen's compensation case on the defense of intoxication is on the employer.  Johnson v. Hahn Bros. Constr., Inc., 188 Neb. 252, 196 N. W. 2d 109.

After examination of the entire record, we determine that the findings of fact of the Workmen's Compensation Court must be affirmed.  We note

that the compensation court found that "the blood examination showing a .142% blood alcohol concentration is clear evidence that plaintiff was suffering a degree of alcohol intoxication." Plaintiff himself testified that he had had 2 drinks at 11 a.m., and another later during the noon hour. Defendant's pathologist testified that even one drink will cause a degree of mental intoxication to the extent of the alcohol level of the one drink. Plaintiff was suffering a degree of alcohol intoxication. In our judgment, the remainder of the findings in this regard do not indicate that the court found the degree of intoxication shown was sufficient to cause substantial physical and mental impairment. The compensation court found that that conclusion was one *indicated* by defendant's pathologist. All findings of fact made must be considered on the issue of causation. In paragraph IX of its findings, the compensation court found, in part, that, "although there is evidence that plaintiff was negligent and was in a state of intoxication, the Court finds that defendant has failed to prove that the plaintiff's negligence or the state of his intoxication was the cause of the accident * * *." The court further found, in paragraph X: "There was no evidence of plaintiff's truck tractor unit weaving from side to side prior to running into the guardrail and although plaintiff talked to a dispatcher and at least one other employee of defendant prior to leaving the terminal, they did not testify that plaintiff was in the state of intoxication prior to starting on his unfortunate journey."

This court notes that one other employee of defendant who talked to plaintiff between 4 and 5 p.m., on May 6, 1977, was the manager of the terminal at North Platte. This manager testified at the trial, but no question on the matter of intoxication was directed to him. It is apparent the finder of fact herein considered that an experienced manager would notice the effects of the degree of intoxication

indicated by the blood test and testified to by defendant's pathologist, and that such an experienced manager would hardly permit a person, as intoxicated as the hypothetical person described by the pathologist, to take a 65-foot long truck on the highways of the state.

It is undisputed that plaintiff talked to at least two responsible employees of defendant at some length, and that plaintiff was at defendant's terminal for at least 45 minutes to 1 hour before leaving on the trip. The finder of fact would be fully justified in finding that those undisputed facts would conclusively prove that plaintiff could not have been as intoxicated as the hypothetical person described in the testimony of defendant's pathologist. The degree of intoxication and the effect of that degree of intoxication are fact questions to be determined by the factfinder in the light of all the evidence.

In this connection we further note the testimony of defendant's pathologist that a person suffering a .170 percent degree of alcohol would be weaving down the road and the testimony of the eyewitness that plaintiff's truck was not weaving. The finder of fact has found the truck was not weaving. There is evidence to support this finding. This leaves the inescapable conclusion that the finder of fact concluded plaintiff was not suffering a degree of intoxication of .170 percent.

Other evidence adduced on the issue of causation included testimony from the driver who had driven the same rig from Rawlins, Wyoming, to North Platte, and had turned it over to defendant on May 6, 1977, for the continuation of the trip to Cameron, Missouri. This driver testified he had noticed something unusual about the operation of the truck while he was operating it, in that the truck was "wild, squirrelly;" "that it did not operate normally;" and that "any unevenness, any variation in the height of the road, it would tend to dart right or left." The

witness, an experienced truckdriver who had been in the tire business, testified that he blamed the tires for the problems he experienced while driving. He testified he didn't feel it was right "that they would have radial tires on the powering equipment and not on the trailing equipment." Evidence showed that the tractor of the rig, which both plaintiff and this witness were driving on May 6, did have experimental radial tires on the tractor, or powering equipment, and fabric bias-ply tires on the trailing equipment.

In summation, we hold there is sufficient evidence for the finder of fact to determine that at the time of the accident plaintiff was suffering a degree of intoxication. We further find that, on the issue of causation, evidence was presented which, if believed by the factfinder, supports the conclusion that defendant has failed to prove by a preponderance of the evidence that the accident occurred because of plaintiff's degree of intoxication.

The findings of fact and causation of the Workmen's Compensation Court are not clearly wrong. Instead the evidence is sufficient to support the findings and action of the compensation court.

On his cross-appeal, plaintiff complains of the allowance of an attorney's fee in the amount of $500 on the rehearing before the compensation court. The gist of plaintiff's complaint is that an employee should be entitled to introduce evidence on the question of reasonable attorney's fees for the consideration of the Workmen's Compensation Court when an employer does not obtain a reduction in the award made by a single judge. In this case plaintiff offered no such evidence. The granting of an attorney's fee on rehearing, in a case such as this, is within the discretion of the Workmen's Compensation Court as set out in section 48-125, R. R. S. 1943.

The award of the Workmen's Compensation Court is correct and is affirmed in all respects. Plaintiff

is allowed the sum of $500 for the services of his attorney in this court.

AFFIRMED.